FRUGÉ, Judge.
This is an action ex contractu instituted by plaintiff against Sulphur Motor Company, Inc. Plaintiff alleges that the defendant is indebted to him in the amount of $2,-653.50 as a result of an oral employment agreement, and additionally seeks the recovery of penalty wages and attorneys’ fees under LSA-R.S. 23:632. The trial court awarded plaintiff judgment in the amount of $570.70, expressing no opinion as to plaintiff’s claim for penalty wages and attorneys’ fees. From this judgment plaintiff has appealed asking that the award be increased to the amount prayed for, and further asking that we amend the judgment so as to include penalty wages and attorney fees.
The evidence establishes that on or about the 8th day of March, 1961, plaintiff and *274 •Garland Mahaffey, who at that time was vice president and a director of the defendant motor company, entered into an agreement whereby plaintiff was to take the position of Sales Manager of Sulphur Motor Company Inc. beginning March 14, 1961. In consideration for this agreement, plaintiff was to receive a monthly salary of $650, plus $75 per month for expenses. Additionally, plaintiff contends that he was to receive 15'% of the net profits before income taxes. Plaintiff’s employment by the defendant company terminated in the middle of January, 1962.
Plaintiff was paid his monthly salary of $650 and his expense allowance of $75, therefore the sole issue before this court concerns the question of plaintiff’s right to 15 per cent of the net profits earned by the defendant during the period of March 14, 1961 until December 31, 1961
The defendant, through its president, denies that any such agreement was entered into between the parties. In the alternative it is urged that, notwithstanding that such an agreement may have been perfected, Mahaffey had no authority to enter into a profit sharing employment contract with an employee.
A review of this case shows that, in addition to the testimony of plaintiff, Kenneth Bredehoeft testified that Mahaffey had instructed him to pay plaintiff 15 per cent of the net profits as part of his salary. Mr. Bredehoeft, at the time the agreement was entered into, was the Secretary and Office Manager of the defendant company. The trial judge chose to believe the testimony of these two witnesses, and held that plaintiff had established a binding contract under the provisions of LSA-C.C. Art. 2277. Since this conclusion is based for the most part on the credibility of the witnesses, whom he observed and heard, we are unable to say that he is manifestly wrong.
 Insofar as defendant’s alternative contention is concerned, we are of the opinion that the authority of Mahaffey is not properly at issue on this appeal. Whether or not Mahaffey had the authority to bind the defendant company under such an agreement is an affirmative defense which should have been specifically pleaded in the lower court. Stafford’s Estate v. Progressive Nat. Farm Loan Ass’n, 198 La. 122, 3 So.2d 532; Barnett Co. v. Ludeau, 171 La. 21, 129 So. 655. An examination of the pleadings, par-ticulaxdy defendant’s answer to plaintiff’s petition, reveals no such allegation. Nor do we find that this contention was raised on the trial of this case. Thus, the District Judge, in his reasons for judgment, stated: “There is no dispute about Mr. Mahaffey’s capacity to make such an agreement, and since he did have the capacity, the corporation itself is bound by whatever agreements he may have made.” Defendant cannot now, for the first time, urge on appeal a special defense which was not raised in the lower court.
Plaintiff remained in the employ of the defendant company until the middle part of January, 1962. Prior to this date, however, Mr. Taussig, President of the defendant company, entered into an arrangement with plaintiff effective December 1, 1961, whereby plaintiff’s pay arrangement would be $500.00 per month plus 5 per cent of the vehicle selling gross. Neither party to this suit disputes the fact that this agreement was entered into. Plaintiff, however, contends that since the new arrangement makes no reference to the 15 per cent of the net profits, which he was entitled to under the first agreement, lie is entitled to 15 per cent of the net profits through the month of December, 1961.
The trial judge, on the basis of this new agreement, held that plaintiff was entitled to 15 per cent of the net profits from March 13, 1961, through November 30, 1961, the date that the new agreement was to become effective. Considering the terms of both of the agreements, we find no error in this conclusion. In the construction of contracts a court must, if possible, ascertain and give effect to the mutual intention of the *275 parties. LSA-C.C. Art. 1950; Cooley v. Meridian Lumber Co., 195 La. 631, 197 So. 255; Hunt Trust v. Crowell Land & Mineral Corp., 210 La. 945, 28 So.2d 699. Furthermore, it is a well settled rule that in construing the terms of an agreement, the fact that informed and experienced persons do not customarily bind themselves to unjust and unreasonable obligations must be considered. Oil Field Supply & Scrap Material Co. v. Gifford Hill & Co., 204 La. 929, 16 So.2d 483. Although plaintiff’s salary under the new agreement ($500) was somewhat less than it was under the old agreement ($650), his total remuneration was substantially the same. This is supported by plaintiff’s own testimony. (Tr. 46) Under these circumstances we think that had the parties intended to retain the part of the previous arrangement whereby plaintiff was to receive 15 per cent of the net profits, they would have included this item in the new agreement.
Having found that plaintiff is entitled to 15 per cent of the net profits from March 13, 1961 through November 30, 1961, we now turn to the question of what were the net profits for this period. The official financial statement of the defendant company shows a net profit of $10,973.38 for the year 1961. However, the defendant’s accountant, Wilson Mayes, testified that this amount should be adjusted so as to take into consideration certain expenses incurred during the year 1961, but recorded in 1962. According to his calculations (taking these expenses into consideration), the adjusted net profit for the year 1961 would amount to $6,590.63. We have no reason to doubt the authenticity of these expense items, but we do not think that the adjusted net profit, as reflected by his calculation, is correct. If there were expense items incurred during 1961, but not recorded until 1962, there must likewise be expense items recorded and paid during 1961, but incurred during the year 1960. Any adjusted net profit should reflect these expenses as well as the expenses deducted by Mayes. Since there is a conflict in the evidence as to what the actual net profit of the defendant company is, we think the best evidence is the official financial statement of the company. This is the net profit which is shown on the defendant company’s income tax statement for the year 1961 and the one which this court adopts in computing the award to which plaintiff is entitled. According to the financial statements of the defendant, the net profit for the period beginning March 15, 1961 and ending November 30,1961 amounted to $6,792.53. To this amount, both parties agree, should be added the amount of $2,000. This item represents a bonus paid to Mahaffey and not charged to the operating expenses. Thus, the total net profit amounted to $8,792.53. Fifteen per cent of $8,792.53 amounts to $1,318.88. The judgment of the lower court will be amended accordingly.
 The last issue which need be resolved is whether or not plaintiff is entitled to penalty wages and attorneys’ fees. Relative to this question, the court in Walter v. Clark, La.App., 143 So.2d 113, 117, stated:
“In regard to plaintiff’s claim to statutory penalties we observe that the statutory provisions above cited, (LSA-R.S. 23:631, 23:632), have uniformly been held, in a long line of decisions, to be coercive or penal in nature, therefore are strictly construed and yield in interpretation and application to equitable defenses.” (Numerous citations omitted.)
Furthermore, it has been held on at least two occasions that an employer may refuse the payment demanded where it is more than the amount due under the employment agreement, without subjecting himself to the penalties and attorneys’ fees provided by this statute. Strickland v. American Pitch Pine Export Co., 224 La. 949, 71 So.2d 338; Duke v. Ford, Bacon & Davis, Inc., 19 La.App. 27, 138 So. 675.
In the instant case, we think that the amount due plaintiff was subject to a real *276 and bonified dispute. This is especially true in view of the change in employment agreements. Accordingly, the assessment of penalty wages and attorneys’ fees is not justified and were properly omitted in the lower court’s judgment.
For the reasons assigned, it is therefore, adjudged and decreed that the judgment of the district court be amended so as to award plaintiff the sum of $1,318.88; and in all other respects said judgment is affirmed; defendant to pay all costs of this appeal and of these proceedings.
Amended and affirmed.
On Application for Rehearing
En Banc. Rehearing denied.