282 So.2d 794 (1973)
William E. GEER, Plaintiff-Appellee,
v.
NELSON DODGE, INC., and Nelson Dodge Truck Center, Inc., Defendants-Appellants.
No. 4301.
Court of Appeal of Louisiana, Third Circuit.
September 18, 1973.
*795 Baggett, Hawsey, McClain & Morgan by Robert E. Morgan, Lake Charles, for plaintiff-appellee.
Collings & Collings by R. William Collings, Lake Charles, for defendants-appellants.
Before FRUGE, SAVOY and DOMENGEAUX, JJ.
FRUGE, Judge.
Plaintiff, William E. Geer, was an automobile truck salesman for the defendants, Nelson-Dodge, Inc., and Nelson-Dodge Truck Center, Inc., from August, 1968, until the time of termination of his work on March 5, 1971.
During the time of plaintiff's employment, there were several alterations made in his payment schedule and the corresponding "washout period" (to be explained in a subsequent paragraph). Arising from the changes in pay schedule and from surrounding circumstances, this suit was instituted by the plaintiff for unpaid commissions, unpaid salary, and for penalty wages and attorney's fees provided by LSA-R.S. 23:631 and 632.
"R.S. 23:631 provides that an employer must pay an employee who has been discharged or who resigns `within twentyfour hours after such discharge or resignation * * * upon demand being made on the employer by the discharged or resigned * * * employee at the place where the employee * * * is usually paid.' And R.S. 23:632 provides penalties for the employer's failure to timely pay the wages due the employee. The penalties include up to three months' pay, plus attorney's fees." Becker v. Choate, 204 So.2d 680, 683 (La.App. 3rd Cir. 1967).
*796 Judgment was rendered against the defendants, under the aforementioned revised statutes, for the sum of $3,600.00 in penalty wages, plus $1,000.00 for attorney's fees, together with legal interest thereon, from date of judicial demand until paid, and all costs. The trial court determined that the asserted six-month employment contract was in the contemplation of the parties but was not guaranteed, and, therefore, resulted in only a month-to-month hiring contract. Therefore, the four-month salary claim on this alleged employment contract was denied. The defendants appealed only the assessment of attorney's fees and penalty wages under LSA-R.S. 23:631 and 632. We conclude that the judgment of the lower court, being soundly buttressed by the jurisprudence of this state, indicates and requires that this court affirm the ruling of the trial court.
The pertinent facts of this case are as follows. During the month of August, 1968, plaintiff became employed as a salesman of defendant at a pay scale or salary of $800.00 per month. The plaintiff's salary was increased during the month of June, 1970, to $1,000.00 per month, with a concurrent three-month "washout period" also included in the employment contract. The so-called "washout period" is the term describing the period during which the total salary paid on a monthly basis is balanced against the total commissions earned by the particular salesman. If at the end of the period the commissions exceed the total salary, the employer owes the salesman the excess. The commissions referred to in the foregoing were 30% of the gross profit on all sales transacted by the salesman over the period of time regarded as the "washout period." It is here recognized that throughout the years of the plaintiff's employment, he was paid on a month-to-month basis.
During the month of December, 1970, the plaintiff and defendants agreed that his new salary was to be in the amount of $1,200.00 a month, and that the "washout period" under this new employment arrangement was to be of a six-month duration. Under this agreement, the plaintiff was last paid on February 15, 1971, but worked additionally on the 16th, 17th, 18th, and 19th of February, 1971, and entered the hospital the afternoon of the last stated date.
Plaintiff's unrefuted testimony was to the effect that during the hospitalization he had telephoned defendant, Jack Nelson, and spoken to him in what appeared to be agreeable terms. Plaintiff asked if someone would deposit his paycheck, due March 1st, in his bank account, at which time plaintiff received no contrary indication that this would not be done. Money owed plaintiff was never deposited in his account during his hospitalization, and following his discharge from the hospital the plaintiff made demand upon defendants for his wages and was told that he would not be paid.
It is noted that defendant never contested its indebtedness to plaintiff. It appears that the only reason advanced for the failure to pay plaintiff was that the defendant-employer could not afford it. It is important to note that there was no evidence or testimony, whatsoever, which tended to contradict the plaintiff's testimony concerning his having worked the days between the 15th of February and the afternoon of February 19, 1971.
In regard to the alleged indebtedness for wages by the defendants, the following paragraphs from the Judge's written reasons are quoted, as they have been found to be clearly substantiated by a careful reading of the record.
"The last item we will discuss is plaintiff's claim for penalty wages and attorney fees. This claim has merit.
"Plaintiff alleged he was fired on March 5, 1971, and has never been paid his salary from February 15, 1971, although he demanded his pay on March 5 and repeatedly since. In their answer to this suit defendants alleged that plaintiff voluntarily *797 left their employ `on or about' February 15, 1971. However, in their trial brief they take the position that they terminated him on February 15. The testimony rather clearly establishes that neither of these events happened on February 15 and that it was not until March 5 that defendant's president, Jack Nelson, told plaintiff for the first time that he had become dissatisfied with their arrangement and had decided to end it.
"The court finds the relevant facts of what happened to be as follows: plaintiff was paid on February 15, 1971, his regular bi-monthly check of $600. He continued working until February 19. The afternoon of that day he entered the hospital where he remained for two weeks. On March 5 he returned to work and asked for his pay for the last half of February. Nelson told him he did not want `any more of that deal' (meaning concentration on fleet sales at $1,200 a month) and would not pay him anything. Plaintiff persisted in his demand for payment. Nelson held to the position that the termination was effective February 15 and nothing was due. A different arrangement was then suggested by Nelson that plaintiff continue his efforts to make fleet sales on a 50% commission but no salary. Plaintiff thought about this for a few days then returned and announced his rejection of it and again demanded his pay from February 15 which was again refused. He has never been paid nor has there been a tender of payment."
In reference to the determination of applicability of the penalty provisions of the Revised Statutes aforesaid, the following jurisprudence has been found by this court to clearly support the judgment. In the case of Harrison v. First National Funeral Homes, Inc., 244 So.2d 102, 105 (La. App. 3rd Cir. 1971), the burden of proof imposed on a plaintiff in cases of this nature was explained. It was stated:
"The burden of proof rests upon plaintiff to establish by a preponderance of the evidence the facts upon which he relies to support his claim for an award of penalties under LSA-R.S. 26:632. Two of these essential elements of proof, of course, are that wages actually are owed to plaintiff and that such wages have not been paid."
On the basis of the record presented to this court for review, it has not been found that the lower court has manifestly erred in its determination of fact. It is, therefore, concluded that wages were owed to the plaintiff but were not paid.
Having found that wages were owed and not paid in accordance with law, the last issue which must be decided by this court is whether or not the plaintiff was entitled to the penalty wages and attorney's fees as awarded by the lower court. In the resolution of this issue, this court notes the following excerpt from Howk v. Sulphur Motor Co., 155 So.2d 272, 275 (La.App. 3rd Cir. 1963), in noting the considerations involved in dealing with this stern statute.
"The last issue which need be resolved is whether or not plaintiff is entitled to penalty wages and attorneys' fees. Relative to this question, the court in Walter v. Clark, La.App., 143 So.2d 113, 117, stated:
"In regard to plaintiff's claim to statutory penalties we observe that the statutory provisions above cited (LSA-R.S. 23:631, 23:632), have uniformly been held, in a long line of decisions, to be coercive or penal in nature, therefore are strictly construed and yield in interpretation and application to equitable defenses.' (Numerous citations omitted.)
"Furthermore, it has been held on at least two occasions that an employer may refuse the payment demanded where it is more than the amount due under the employment agreement, without subjecting himself to the penalties and attorneys' *798 fees provided by this statute. Strickland v. American Pitch Pine Export Co., 224 La. 949, 71 So.2d 338; Duke v. Ford, Bacon & Davis, Inc., 19 La.App. 27, 138 So. 675."
In regard to the matter of "equitable defenses," the case of Becker v. Choate, 204 So.2d 680, 683 (La.App. 3rd Cir. 1967), provides noteworthy insight. The court in Becker stated the following:
"While cases on this point generally state that R.S. 23:632 is subject to `equitable defenses', we are of the opinion that the word `defenses' does not mean a `defense' in the strict sense of the word. Rather, the tenor of these cases seems to indicate that the court will refuse to assess penalties and attorneys' fees where the facts of the particular case strongly indicate that greater justice will be attained by such refusal. These facts then become equitable considerations, or `defenses' in a loose sense of the word, which will move the court to deny the penalties."
After a review of the record and with the aforestated jurisprudential considerations in mind, this court has concluded that the evidence of the plaintiff was more convincing than that to the contrary and, therefore, he has met the burden of proof imposed upon him.
In the case of Young v. White Stores, Inc., 269 So.2d 266, 269 (La.App. 3d Cir. 1972), the court held that actions of an employer in conformity with store procedural policy could not outrank the validity and superiority of state law. If (under the Young case, supra) legitimate employer procedural policies for payment of wages to discharged employees cannot outrank or invalidate state law, surely, in the instant case, a mere refusal to pay undisputed wages cannot be asserted as a means to alleviate responsibility under the penal provisions of the revised statutes in point.
The facts and circumstances as reflected by the record do not reveal any elements or instances which would be of a mitigating nature. There also appears to be no dispute which would in any fashion justify the withholding of the wages due to the plaintiff in this case. Therefore, the penal provisions of Revised Statute 23:632 are upheld as imposed by the lower court.
There is no evidence in the record to reflect that at the time the initial demand was made by the plaintiff that it was made for more than the amount which was due to him at the time. Therefore, this case does not fall within the scope of those cases which have held that an employer's failure to pay an amount in excess of that actually due did not give rise to the bad faith or arbitrariness necessary to the imposition of the penal statute.
In regard to the appellants' assertion of error of the trial court in regard to the facts, the following statement by the court in Krison v. Texas Industries, Inc., 253 So.2d 614, 619 (La.App. 2nd Cir. 1971), is determinative thereof.
"The resolution of this factual issue depends largely upon the credibility of the witnesses and particularly of plaintiff. The rule in Louisiana is that, in the absence of manifest error, the trial judge will not be reversed on questions of fact, especially when the questions of fact have been resolved by the testimony of witnesses who appeared before the trial judge. Orlando v. Polito, 228 La. 846, 84 So.2d 433 (1955)."
This court has chosen to utilize in whole a concluding paragraph of the learned trial court's written reasons for judgment, due to our determination that it is most appropriate and most considerate of the issue at point in the present case.
"In the latest 3rd Circuit case we know of on this subject, Young v. The White Store, Inc., 269 So.2d 266 ([La.App.] Oct., 1972), it was held that an employer cannot excuse its failure to pay a terminated employee his owed wages within twenty-four hours of demand when the delay is without reasonable justification. The case reiterates the requirement of the application of the stricti juris construction rule to any case involving this *799 law. Applying the stricti juris construction rule, and mindful of other cases on the subject before Young, the court has searched in vain for some reasonable justification, either in the facts or in the law, to avoid the impositon of the harsh penalty this statute imposes when its conditions are met. We have found no such justification. To the contrary, the court found several flaws in the defendants' case in the testimony as well as the abrupt change of position mentioned earlier between their pleadings and their argument, and the court must therefore conclude that plaintiff has proved his entitlement to penalty wages and attorney's fees clearly and convincingly.
"Under the circumstances of this case, the provisions of the above quoted statute require that plaintiff be paid ninety days wages at his daily rate of $40.00, amounting to $3,600. He is also entitled to attorney's fees in the amount of $1,000.00."
On the basis of the foregoing, we affirm the judgment of the trial court; defendants-appellants to pay all costs.